UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEVIN EDWIN MOE,

                Plaintiff,      **No. 1:15-cv-00347(MAT)**
                                       **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

---

## I. Introduction

Represented by counsel, Kevin Edwin Moe ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. Procedural Status

On December 5, 2011, Plaintiff protectively filed an application for DIB, alleging an onset date of November 14, 2011, and a date last insured of December 31, 2016. The claim was denied at the initial level on March 9, 2012, and Plaintiff requested a

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

hearing. Administrative Law Judge David S. Lewandowski ("the ALJ") conducted a hearing on September 9, 2013, in Buffalo, New York. Plaintiff appeared with his attorney and testified. The ALJ issued an unfavorable decision on October 9, 2013. (T.14-35).[2] Plaintiff's request for review by the Appeals Council was denied on February 20, 2015, making the ALJ decision's the final decision of the Commissioner. Plaintiff then timely filed this action.

Plaintiff and Defendant have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions. For the reasons set forth herein, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

**III. The ALJ's Decision**

The ALJ followed the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: Human Immunodeficiency Virus ("HIV"), peripheral neuropathy and lumbar spine osteopenia. The ALJ

---

[2] Citations to "T." in parentheses refer to pages from the certified administrative transcript.

found that Plaintiff's diagnosed conditions of hepatitis type B, hepatitis type C, and anxiety disorder with substance abuse in early remission do not cause significant work-related limitations and therefore are not "severe."

At step three, the ALJ compared Plaintiff's In particular, the ALJ found that Plaintiff's HIV does not meet or equal Listing 14.08 because his HIV is "stable . . . with use of medication and care." Further, the ALJ found, there is no indication that Plaintiff's peripheral neuropathy that meets or equals Listings 11.14 or 4.11. Finally, the ALJ found no indication that Plaintiff's lumbar spine osteopenia meets or equals Listings 1.02, 1.03 or 14.09.

The ALJ then assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with these limitations: he is "frequently able to climb stairs; frequently able to engage in handling and fingering; should avoid hazards; and requires unscheduled breaks once per week [sic] for five minute duration."

At step four, the ALJ found that Plaintiff has past relevant work as a post office mail handler, Dictionary of Occupational Titles ("DOT") No. 209.687-014, which is semi-skilled (SVP-4) work, and which is performed at the light exertional level. (T.59). The VE noted that Plaintiff testified that he lifted up to 40 pounds in his job as a mail handler, which is consistent with medium work. In addition, the VE stated that information in the file indicated that

Plaintiff lifted between 30 and 70 pounds, which suggests Plaintiff at times performed his job at the heavy exertional level. Therefore, the ALJ found, in light of the RFC assessment, Plaintiff is unable to perform his past relevant work.[3]

At step five, the ALJ found that Plaintiff was 51 years-old, defined as an individual closely approachh1g advanced age, on the onset date; he has a high school degree and two years of college; and he can communicate in English. Based on the VE's testimony, the ALJ found that in light of Plaintiff's age, education, vocational experience, and RFC, he can perform the requirements of semi-skilled and light exertional jobs such as file clerk, DOT No. 206.387-034, light exertion and semi-skilled (SVP-3) work; Host, DOT No. 352.667- 010, light exe1tion and semi-skilled (SVP-3) work; and hotel clerks, DOT No. 238.376-038, light exertion and semi-skilled (SVP-4) work, all of which exist in significant numbers in the national and regional economies. The ALJ further found that Plaintiff can perform a significant number of other jobs in the national economy that are light and unskilled jobs when considering his age, education, work experience and RFC for a limited range of light work, such as packer, assembler, surveillance system monitor, and ticket taker.

---

[3] Consultative psychologist Dr. Sandra Jensen, in her report dated January 26, 2012, indicated that Plaintiff had been employed full-time as a mail handler at the U.S. Postal Service since 1985, and was currently on medical leave due to his neuropathy. (T.300).

Accordingly, the ALJ entered a finding of not disabled.

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]" Id. "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

**V. Discussion**

    **A. Error in Applying the Treating Physician Rule (Plaintiff's Point I)**

Plaintiff contends that the ALJ erred in failing to accord controlling weight to the Physical Residual Functional Capacity Questionnaire ("RFC Questionnaire" provided by his primary care physician Plaintiff's treating physician, Dr. Fatai Gbadamosi, with Evergreen Health Services, on August 10, 2013. (See T.763-66).

-5-

Dr. Gbadamosi noted that Plaintiff's diagnoses included AIDS;[4] anxiety; paranoid state, episodic; and peripheral neuropathy. (T.763). Plaintiff's symptoms included migraine headaches without aura, peripheral vision loss, scoliosis, hearing voices, hallucinations, sleep disturbance, and poly-neuropathy that causes intermittent numbness and at times severe pain in both upper and lower extremities. (T.763). Dr. Gbadamosi checked a box indicating that Plaintiff's symptoms "frequently" interfere with the attention and concentration needed to perform "even simple work tasks," and that he was "incapable of even 'low stress' jobs," because he "often loses touch [with] reality and suffers from anxiety." (T.764). Dr. Gbadamosi stated that Plaintiff could sit for 30 minutes at a time and for less than 2 hours total; stand for 30 minutes at a time and for less than 2 hours total; and needed to walk around every 30 minutes for 10 minutes at a time during an 8-hour workday. (T.764-65).

Dr. Gbadamosi estimated that Plaintiff could lift 10 to 20 pounds "occasionally," could lift less than 10 pounds "frequently," could "occasionally" twist and stoop (bend), could "rarely" crouch/squat and climb stairs, could "never" climb ladders, and could use his hands, fingers, and arms to twist, manipulate objects, reach (overhead) for 50 percent of an 8-hour

---

[4] Plaintiff concedes that testing showed "his t-cell count and viral loads were stabilized in the sense that his HIV was not progressing. . . ." (Plaintiff's Memorandum of Law ("Pl.'s Mem.") (Dkt #7-1) at 17).

workday. (T.765-66). Dr. Gbadamosi also opined that Plaintiff's fatigue would interfere with his ability to sustain full-time employment, and that his symptoms would cause him to miss more than 4 days of work per month. (T.766).

Under the Commissioner's Regulations in effect at the time of the ALJ's decision, a treating physician's opinion is generally entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Before an ALJ "may elect to discredit" a treating physician's opinion, "must explicitly consider (1) the frequency of examination and length, nature, and extent of the treatment relationship, (2) the evidence in support of the physician's opinion, (3) the consistency of the opinion with the record as a whole, (4) whether the opinion is from a specialist, and (5) whatever other factors tend to support or contradict the opinion." Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 199 (2d Cir. 2010) (unpublished opn.) (citing Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); other citations omitted). The Second Circuit has stated on many occasions that it does "not hesitate to remand when the Commissioner has not given good reasons for the weight given to a treating physician's opinion." Gunter, 361 F. App'x at 199 (citing Halloran, 362 F.3d at 32).

Here, the Commissioner does not dispute that Dr. Gbadamosi qualifies as "treating physician" given the length of his treatment relationship with Plaintiff and the frequency with which he treated Plaintiff for his HIV and related conditions, including peripheral neuropathy. In his decision, the ALJ gave "little weight to the extreme assessment dated August 10, 2013, of [Plaintiff]'s condition and disabling restrictions provided by Dr. Gbadamosi[,]" because "[t]he evidence as a whole in accordance with the analysis herein does not indicate [Plaintiff] has significant difficulty walking or standing, muscle weakness, problems using his hands or problems reaching due to AIDS as asserted by Dr. Gbadamosi on August 10, 2013." (T.27). The ALJ observed that Dr. Gbadamosi's "treatment notes are inconsistent with this disabling assessment of [Plaintiff]'s condition as well." (Id.). The ALJ also noted that "EMG studies indicate that [Plaintiff] only has mild neuropathy[,]" and his "examinations are generally negative." (Id.). The Regulations specifically contemplate that when a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques[,]" 20 C.F.R. § 1527(d)(2), an ALJ is not bound to give it "controlling," id., weight. Therefore, it was not improper for the ALJ to cite inconsistencies between Dr. Gbadamosi's opinion and his own treatment notes (clinical techniques) and EMG studies (laboratory diagnostic techniques).

Plaintiff argues that the ALJ "attempt[ed] to downplay the significance of the EMG findings." Plaintiff is referring to an EMG study (T.580-81) performed on November 23, 2011, which was ordered by Plaintiff's neurologist, Michael Battaglia, D.O. Interpreting the results of the study, Dr. Battaglia stated that the EMG of the lower extremities was "[a]bnormal" in that there was "electrical evidence of peripheral polyneuropathy." (T.582-83). Dr. Battaglia continued, "[t]here is neuropathy as a demyelinating component, and [sic] is mild in degree electrically." (T.583). Plaintiff contends that the ALJ's description of the EMG results as "mild" "is an improper attempt by him to assert his lay interpretation of the significance of the EMG study." (Pl's Mem. at 15). However, the neurologist, Dr. Battaglia, specifically characterized the electrical degree of Plaintiff's neuropathy as "mild." The Court is thus unable to discern how the ALJ mischaracterized the record. The Court surmises that Plaintiff is contending that even though the EMG results may have been electrically mild in degree, Plaintiff's actual symptoms were more than "mild." If that is Plaintiff's argument, it is not supported by substantial evidence, in particular, neurologist Dr. Battaglia's reports. For instance, Plaintiff saw Dr. Battaglia in follow-up on August 22, 2012, and reported that he had been taking his gabapentin, and that his pain had been relatively stable since his last visit, with no definitive exacerbation in his leg numbness, tingling, or pain. (T.720). On

examination, Plaintiff had normal limb strength, readily stood from a chair, could climb onto the examination table without difficulty, and heel- and toe-walked with only subtle collapse on occasion. (Id.). His reflexes were 2/4 (normal) and symmetric; he had no dysmetria, dysarthria, or gait ataxia; his plantar response was flexor; and he had a normal stance, stride, and arm swing when ambulating. (Id.). Dr. Battaglia noted that Plaintiff's neurologic examination was "baseline" and his neuropathy was "stable." (Id.). Dr. Battaglia did not recommend further neurodiagnostic testing. (Id.). When Plaintiff saw Dr. Battaglia again for follow-up on February 13, 2013, he had no pain in his feet or toes, but he did have a persistent loss of sensation. (T.708). On examination, Dr. Battaglia noted that Plaintiff had good limb strength; no significant atrophy of the intrinsic muscles in his feet; his reflexes were 2/4 (normal) and symmetric; he had diminished vibratory sensation in his toes and pinprick to the lower calf bilaterally but unimpaired joint position sense. (Id.). Plaintiff walked with a steady gait and a normal stance, stride, and arm swing. He was able to walk on his heels and toes, stand from a chair, and climb onto the examination table without difficulty. Dr. Battaglia stated that he was "pleased to report" that Plaintiff was "status quo in regard to his neuropathy." (Id.). Plaintiff's medications remained the same, and no further neurodiagnostic testing was ordered.

The ALJ discounted Dr. Gbadamosi's comments on Plaintiff's psychological impairments because they were "outside of his field of expertise" and inconsistent with his treatment notes which indicated that Plaintiff "has appropriate demeanor and has intact attention, concentration, memory." (T.27). The ALJ also noted that Plaintiff consistently "denie[d] the need for mental health treatment and is able to self-manage his mental problems." (T.27). These statements do not mischaracterize the record and are supported by substantial evidence. The Commissioner points out that the sole record Plaintiff cites documenting complaints of anxiety is from September 6, 2011, which was 2 months prior to the onset date. (See Pl.'s Mem. at 18 (citing T.225)). Moreover, this record does not unambiguously document that Plaintiff was experiencing anxiety. While Dr. Gbadamosi listed "anxiety" as one of Plaintiff's "[c]urrent [p]roblems," under "ROS" (review of symptoms), "psychiatric," Dr. Gbadomosi wrote "[p]ositive for sleep disturbance. *Negative for anxiety, depression or suicidal thoughts*." (T.225) (emphasis supplied). Plaintiff further neglects to mention the numerous treatment records during the relevant period documenting that he did not have anxiety or depression and had an appropriate affect and demeanor. (See, e.g., T.626-27 (12/5/11, "negative for anxiety, depression or suicidal thoughts"), T.628-29 (12/13/11, was hearing voices saying profanities but was able to tune them out; he had appropriate affect and demeanor),

T.631-32 (2/17/12, only psychiatric issue was insomnia; he had appropriate affect and demeanor), T.640-41 (4/10/12, negative for anxiety, depression and sleep disturbance), T.643-44 (4/26/12, "reports anxiety, self-manages, denies history or need for psych meds"), T.646-47 (5/22/12, negative for anxiety, depression and sleep disturbance), T.648-49 (7/10/12, negative for anxiety, depression and sleep disturbance), T.723-24 (7/25/12, negative for anxiety, depression and sleep disturbance), T.757 (5/13/13, negative for anxiety, crying spells, depression, anhedonia, personality changes, difficulty concentrating, sadness, or suicidal thoughts), T.782 (7/10/13, negative for anxiety, depression and sleep disturbance).

Similarly, consultative psychologist Dr. Sandra Jensen's January 26, 2012 report (T.300-03) does not support Dr. Gbadamosi's assignment of extremely restrictive limitations due to Plaintiff's alleged mental impairments. Dr. Jensen noted that Plaintiff had no history of psychiatric issues, hospitalizations, or outpatient treatment. On examination, his demeanor and responsiveness to questions were cooperative; his manner of relating, social skills, and overall presentation likewise were adequate. Plaintiff had normal speech; appropriate eye contact; coherent, goal-directed thought processes with no evidence of hallucinations, delusions, or paranoia; a flat affect but a neutral mood; a clear sensorium; and intact orientation to person, place, and time. Based on testing

administered during the examination, Plaintiff had intact attention and concentration, and intact recent and remote memory skills. Dr. Jensen estimated that his intellectual functioning was average, with a general fund of information that was appropriate to his experience. He displayed good insight and judgment. Dr. Jensen noted that Plaintiff was able to perform all activities of daily living without difficulty. For her medical source statement, Dr. Jensen opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress without any difficulty. (T.302). She commented that her evaluation did not evidence any psychiatric issues that would significantly interfere with Plaintiff's ability to function on a daily basis. (T.303).

The ALJ also rejected Dr. Gbadomosi's opinion that Plaintiff his antiretroviral medications "may cause n/v/d [i.e., nausea, vomiting, and diarrhea], [and] fatigue," because Plaintiff "testified that he does not have significant side effects from his medication." (T.27; T.51-52 (testimony)). The ALJ "emphasized that [Plaintiff] even reported in treatment records that he has no side effects from use of his medication." (T.27). Again, these reasons do not misstate the record and are supported by substantial

evidence. For instance, on July 10, 2013, Plaintiff saw Dr. Gbadomosi and was "[n]egative" for any gastrointestinal symptoms such as nausea and vomiting, abdominal pain, acid reflex symptoms, and heartburn. (T.782). On February 22, 2012, Plaintiff denied side effects due to his neuropathy medication to Dr. Battaglia. (T.585).

In sum, the Court finds that the ALJ did not incorrectly apply the principles underlying the treating physician rule in analyzing Dr. Gbadamosi's RFC Questionnaire, and that the ALJ's decision to decline to accord it controlling weight was supported by substantial evidence.

**B. RFC Assessment Unsupported by Substantial Evidence (Plaintiff's Point II)**

Plaintiff notes that the ALJ gave "significant weight" to the opinion of consultative physician Samuel Balderman, M.D. in determining Plaintiff's physical RFC (T.27), but argues that the ALJ's RFC assessment is not consistent with Dr. Balderman's report which opined that Plaintiff had a "moderate" limitation with respect to "prolonged walking or [sic] climbing." (T.307). In addition, Dr. Balderman opined that Plaintiff had a "mild to moderate" limitation with respect to using his hands for repetitive motor function. (Id.). In the RFC assessment, the ALJ found that Plaintiff was able to "frequently" engage in fingering and handling. Plaintiff argues that.

As Plaintiff points out, the Second Circuit, as well as some district courts within it, have issued decisions finding that doctors' opinions assigning "mild" or "moderate" limitations in work-related activities can be too vague to support RFC assessments for sedentary or light work. See, e.g., Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (per curiam) (The ALJ stated that she based this conclusion [that Selian could perform light work] on the reports of Dr. Naughten and Dr. Noia. Dr. Noia, a psychiatrist, did not discuss Selian's ability to lift. Dr. Naughten opined that Selian 'should be able to lift . . . objects of a mild degree of weight on an intermittent basis.' Dr. Naughten's opinion is remarkably vague. What Dr. Naughten means by 'mild degree' and 'intermittent' is left to the ALJ's sheer speculation. . . . Dr. Naughten's opinion does not provide substantial evidence to support the ALJ's finding that Selian could lift 20 pounds occasionally and 10 pounds frequently.") (citing Carrube v. Astrue, No. 3:08–CV–0830(FJS), 2009 WL 6527504, at *8 (N.D.N.Y. Dec. 2, 2009) (reversing denial of benefits where Dr. Naughten offered identical opinion on claimant's ability to lift weight, noting that court "cannot fathom what might support the ALJ's conclusion that [the claimant] could lift and carry twenty-five to fifty pounds"), report and recommendation adopted, 2010 WL 2178499 (N.D.N.Y. May 28, 2010); other citations omitted); Curry v. Apfel, 209 F.3d 117, 123–24 (2d Cir. 2000) ("Dr. Mancheno's use of the terms

'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that Curry can perform the exertional requirements of sedentary work."), superseded by statute on other grounds, as recognized in Douglass v. Astrue, No. 11-3325-cv, 2012 WL 4094881, at *1 (2d Cir. Sept. 19, 2012) (summary order); Malone v. Comm'r of Soc. Sec., No. 08-CV-1249(GLS/VEB), 2011 WL 817448, at *10 (N.D.N.Y. Jan. 18, 2011) (consultative examiner's assessment that claimant had moderate limitation with respect to prolonged standing and sitting "suggests a possibility that prolonged standing might pose a problem;" ALJ's assessment that claimant could perform light work thus was not supported by the record), report and recommendation adopted, 2011 WL 808378 (N.D.N.Y. Mar. 2, 2011). The caselaw in this Circuit is not uniform, however, and "several courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing." Carroll v. Colvin, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) (citing Hammond v. Colvin, No. 12-cv-965, 2013 WL 4542701, at *6 (N.D.N.Y. Aug. 26, 2013); Stacey v. Comm'r of Soc. Sec., No. 09-cv-0638, 2011 WL 2357665, at *6 (N.D.N.Y. May 20, 2011)).

The Regulations define light work as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires *a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, *you must have the ability to do substantially all of these activities*. If someone can do light work, we determine that he or she can also do sedentary work, unless there are *additional limiting factors such as loss of fine dexterity* or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphases supplied); see also S.S.R. 83-10, 1983 WL 31251, at *6 (S.S.A. 1983). As noted above, Dr. Balderman assigned "moderate" limitations with respect to "prolonged walking or [sic] climbing." (T.307). Under the circumstances of this case, the Court finds that Dr. Balderman's opinion, which the ALJ accorded "significant" weight, is not consistent, on its face, with the ALJ's RFC assessment that Plaintiff can perform light work with certain non-exertional limitations. See Carroll, 2014 WL 2945797, at *4 ("Dr. Balderman's report is not the clean bill of health that the ALJ suggests it is. Indeed, even Dr. Balderman, whose opinion received greater weight, found that Carroll suffered from moderate limitations in prolonged sitting and standing. This not necessarily compatible with an ability to perform light work."); see also Malone, 2011 WL 817448, at *10 ("A job in 'the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.' SSR 83-10. The only direct evidence in the record of [the claimant]'s abilities in this

regard is Dr. Wahl's non-specific indication of 'moderate' limitation. At a minimum, an assessment of moderate limitation suggests a possibility that prolonged standing might pose a problem.")).[5]

The ALJ also found that, notwithstanding his assignment of "significant weight" to Dr. Balderman's opinion, that Plaintiff was "frequently able to climb stairs[.]" As noted above, Dr. Balderman imposed "moderate" limitations with respect to "prolonged walking or [sic] climbing." (T.307). The Court notes that Dr. Balderman's opinion is ambiguous as to whether "prolonged" also modifies "climbing" or if it simply modifies "walking." In any event, "moderate" limitations in "climbing," whether prolonged or not, appear to be inconsistent with a finding that Plaintiff can "frequently" climb stairs. Clarification on these points also is required on remand.

Finally, the ALJ stated that Plaintiff was "frequently able to engage in handling and fingering,"[6] while Dr. Balderman opined

---

[5] In Carroll, the district court suggested that if the RFC had included accommodations for breaks or changing positions, it might have ameliorated the problem. Carroll, 2014 WL 2945797, at *4. Here, the ALJ did include the opportunity for an unscheduled break, but oddly enough he permitted only one break *per week* for five minutes at a time. This may simply be a typographical error but, as written, it does not make sense.

[6] "'Handling' involves '[s]eizing, holding, grasping, turning or otherwise working with hand or hands.'" Olmeda v. Barnhart, No. 04 Civ. 5456(PAC), 2006 WL 2255003, at *5, n. 11 (S.D.N.Y. Aug. 1, 2006) (quoting Appendix C, Physical Demands ("App. C"), Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"); citation to record omitted; brackets in original)). In "handling," "[f]ingers are involved only to the extent that they are an extension of the hand, such as to turn a switch. . . ." Id.

-18-

that Plaintiff had a "mild to moderate" limitation with respect to using his hands for repetitive motor function. Again, the ALJ gave Dr. Balderman's opinion "significant weight," but his limitation regarding Plaintiff's use of his hands repetitively is not necessarily compatible with the ALJ's finding that Plaintiff can frequently[7] handle and finger, i.e., do such activities for up to one-third to two-thirds of an 8-hour day (up to 2.64 to 5.36 hours).

Accordingly, this case is remanded to obtain clarification from Dr. Balderman regarding the ambiguous phrase, "prolonged walking or [sic] climbing" (T.307), and clarification regarding Dr. Balderman's "mild to moderate" limitation on Plaintiff's use of his hands for repetitive motor functions. Based on this information, the ALJ may need to reformulate the RFC assessment so as to include unscheduled breaks more than once per week.

## VI. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is not based on substantial evidence and contains legal errors. Accordingly, Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's

---

(quoting App. C, SCO; ellipsis in original). "'Fingering' means '[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling.'" Id. (quoting App. C, SCO; brackets in original).

[7] "'Frequent' means occurring from one-third to two-thirds of the time." TITLES II & XVI: DETERMINING CAPABILITY TO DO OTHER WORK-THE MED.-VOCATIONAL RULES OF APPENDIX 2, SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983).

decision is reversed, and Plaintiff's claim is remanded for further administrative proceedings consistent with this Decision and Order. Defendant's motion for judgment on the pleadings is denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: December 14, 2017
Rochester, New York